UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES ELLIS (#300276)

VERSUS

JAMES M. LEBLANC, ET AL

CIVIL ACTION

NUMBER 09-222-BAJ-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 7, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JAMES ELLIS  (#300276)

VERSUS                                                                               CIVIL ACTION

JAMES M. LEBLANC , ET AL                                         NUMBER 09-222-BAJ-DLD

**MAGISTRATE JUDGE'S REPORT**

Before the court is the defendants' Motion for Summary Judgment. Record document number 51. The motion is opposed.[1] Defendants have filed a sur-reply.[2] For the reasons which follow, the motion should be granted in part and denied in part.

**I. Background**

Plaintiff James Ellis, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana Department of Public Safety and Corrections Secretary James LeBlanc, Assistant Warden Troy Poret, Terri L. Cannon and Maj. William Richardson.[3] Plaintiff essentially makes claims of being threatened with the issuance of a false disciplinary report, being retaliated against for exercising his right of access to the courts, and of deliberate indifference to serious medical needs, all in violation of his constitutional rights. Plaintiff also asserted state tort

---

[1] Record document number 61. Plaintiff relied on a statement of disputed facts, a copy of the plaintiff's Inmate Location Sheet, excerpts from the depositions of Ernest Williams, Jr., Ronnie Fruge, Troy Poret, a copy of a disciplinary report issued to the plaintiff on September 4, 2009, and a copy of a Lockdown Report dated October 17, 2008.

[2] Record document number 66.

[3] Record document numbers 1, 24 and 34.

claims.

Defendants moved for summary judgment relying on a statement of undisputed facts, excerpts from the depositions of Terri Cannon, Troy Poret, William Richardson, a copy of the plaintiff's Inmate Location Sheet, a certified copy of the plaintiff's request for judicial review filed in the Nineteenth Judicial District Court and a copy of the district court's judgment affirming the decision of the Secretary, certified copies of Administrative Remedy Procedure ("ARP") LSP-2007-3723 and a copy of a petition for damages by the plaintiff in the Twentieth Judicial District Court.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c).

### B. Failure to Exhaust Administrative Remedies

Defendants argued that the plaintiff failed to exhaust available administrative remedies before filing suit regarding his claims that on September 3, 2009, Asst. Warden Poret threatened to have the plaintiff assigned to work in the agricultural fields and on September 21, 2009, Asst. Warden Poret brushed against him in the hallway and threatened to issue the plaintiff a disciplinary report.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act ("PLRA") does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218, 127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's

3

requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.*

Plaintiff alleged that he filed ARP LSP-2008-3520 and LSP-2009-2987 regarding the claims raised in the original and amended complaints. The summary judgment evidence showed that ARP LSP-2008-3520 was received on November 14, 2008. Plaintiff complained that he was transferred to extended lockdown shortly after an ARP under judicial review was referred back for further consideration. Plaintiff complained that his transfer to extended lockdown was designed to coerce him into dropping his medical malpractice suit against Dr. Sylvester and the ARP under judicial review. Plaintiff complained that Asst. Warden Poret, Col. Sharp and Maj. Richardson were attempting to coerce him through the use of extended lockdown.

The summary judgment evidence showed that the plaintiff filed ARP LSP-2009-2987 on September 22, 2009. Plaintiff complained in that grievance that on September 3, 2009, Lt. Savoy ordered him out of the line and was told that Maj. Richardson had ordered that he be locked up for failure to report to work in the agricultural fields. He did not mention Asst. Warden Poret's alleged actions of September 3 and 21, 2009.

The summary judgment evidence therefore showed that the plaintiff failed to exhaust available administrative remedies regarding his claims that on September 3, 2009, Asst.

Warden Poret threatened to have the plaintiff assigned to work in the agricultural fields and on September 21, 2009, Asst. Warden Poret brushed against him in the hallway and threatened to issue the plaintiff a disciplinary report.

As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.

The summary judgment evidence showed that both ARP LSP-2008-3520 and LSP-2009-2987 failed to provide prison administrators with a fair opportunity to address the plaintiff's claims regarding the incidents with Asst. Warden Poret which allegedly occurred on September 3, 2009 and September 21, 2009.

### C. No Physical Injury

Defendants argued that pursuant to 42 U.S.C. § 1997e(e) the plaintiff is barred from recovering compensatory damages because the plaintiff failed to allege that he sustained a physical injury.

Subsection (e) of 42 U.S.C. § 1997e provides:

(e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Although § 1997e(e) prohibits the recovery of compensatory damages without a prior showing of physical injury, it does not bar a plaintiff's ability to recover nominal and punitive damages for constitutional violations despite the lack of any physical injury. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

A review of the allegations showed that the plaintiff alleged that on September 10, 2009, he was sent to work in the agricultural fields to further retaliate against him for pursuing his First Amendment right to access the courts.[4] Plaintiff alleged that after walking approximately one mile he collapsed, suffering from chest pain, nausea, dizziness and profuse sweating. Plaintiff alleged that he was transported by ambulance to the prison infirmary where he was treated for dehydration, high blood pressure and high blood sugar.

Contrary to the defendants' assertion, the plaintiff did allege that he sustained a physical injury as a result of the defendants' alleged actions. As such, the plaintiff is not prohibited from recovering compensatory damages pursuant to 42 U.S.C. § 1997e(e).

**D. Eleventh Amendment Immunity**

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's `policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the

---

[4] First Supplemental and Amending Complaint, record document number 24, p. 3, ¶ V.

official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a § 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." An officer sued in his personal capacity comes to court as an individual. However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Therefore, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacity for actions taken by them under color of state law which caused the deprivation of the plaintiff's constitutional rights. Insofar as the plaintiff sought prospective injunctive relief against any defendant in his official capacity, his official capacity claim is also actionable under § 1983. These claims and issues have already been addressed in a prior order of the court. (Rec. doc. 11) Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

**E. Retaliation**

Plaintiff's allegations of retaliation arise originally from his filing of ARP LSP-2007-3723 complaining that a treating physician at the state penitentiary refused to issue him a medical duty status permitting the use of large handcuffs. According to plaintiff, after prison officials denied him relief through the ARP, he sought judicial review of the decision in the

Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana. Following oral argument on October 9, 2008, the Commissioner issued a Stay and Remand Order directing prison officials to reconsider the administrative grievance giving particular consideration to the plaintiff's medical history, his entire medical record and any security concerns. Plaintiff alleged that shortly after the Stay and Remand Order was issued he was transferred from the general population to extended lockdown without cause. He complains that he was transferred to a more onerous housing unit in retaliation for seeking judicial review of the administrative grievance.

He supports this claim of retaliation further by recounting that on November 14, 2008, he filed ARP LSP 2008-3520 complaining that he was transferred to extended lockdown in order to coerce him into dismissing ARP LSP-2007-3723 related to the denial of a medical duty status permitting the use of large handcuffs. ARP LSP-2008-3520 was denied, however, because prison officials cited security concerns as the basis for his transfer to extended lockdown. But according to plaintiff, his designation as a security risk was initiated by Cannon and done for the purpose of deterring him from pursuing the claims regarding his medical duty status permitting the use of large handcuffs raised in ARP LSP-2007-3723, not because of some alleged security risk.

In support of his allegation, plaintiff claims that on December 22, 2008, Asst. Warden Poret urged the plaintiff to dismiss the state court proceedings related to ARP LSP-2007-3723 and became angry at the plaintiff and warned him to drop the state court proceedings. Later that day, Lt. Kenneth Davis offered to reassign the plaintiff to a dormitory and an easy job if he would dismiss the state court suit. Plaintiff also claims that Lt. Davis also stated that he could probably arrange to have flex cuffs used on the plaintiff.

Plaintiff alleged that on December 25, 2008, Asst. Warden Poret advised the plaintiff that he was unable to do anything for him, implying that Cannon had barred any favorable accommodation.

Plaintiff further recounts that on February 9, 2009, he was transferred from extended lockdown to Hawk unit. On March 3, 2009, he was moved to a working cell block and was advised that he would have to perform work in the agricultural fields. Plaintiff explained that at that time he was 70 years old and suffered from high blood pressure, diabetes, high triglycerides and arthritis in both knees.

Nevertheless, plaintiff reported that on September 3, 2009, Asst. Warden Poret threatened to have him assigned to work in the agricultural fields. When he told Asst. Warden Poret that to do so could cause him great bodily harm or death given his medical condition, Asst. Warden Poret allegedly responded that "if he died, the suit would end."

Plaintiff said that on September 4, 2009, he was pulled from the line and was told by Maj. Richardson that he would have to work in the agricultural fields, whereupon he declared himself a medical emergency. Plaintiff alleged that Maj. Richardson denied his request to declare himself a medical emergency and then issued the plaintiff a disciplinary report for aggravated work offense.

On September 10, 2009, he was sent to work in the agricultural fields. Plaintiff alleged that after walking approximately one mile he collapsed, suffering from chest pain, nausea, dizziness and profuse sweating, and he was transported by ambulance to the prison infirmary where he was treated for dehydration, high blood pressure and high blood sugar. Plaintiff alleged that following this incident, Dr. Roundtree issued him a permanent medical duty status of "Regular Duty with Restrictions; Out of Fields and No Sports."

Defendants offer a different version of events. Defendants argue that the plaintiff

was reclassified due to security concerns after Cannon and Poret learned of the plaintiff's prior escape attempts in 2004 while he was confined at Wade Correctional Center. Cannon denied being involved in the plaintiff's reclassification. She argued that she became aware of the plaintiff's prior escape history only after conducting a review of his master prison record in conjunction with the remand by the state court commissioner. Cannon argued that she discussed the plaintiff's escape history with classification officers Ernest Williams and Ronnie Fruge and an assistant warden. Cannon denied any personal involvement in the modification of the plaintiff's custody status.

Poret argued that after discussing the matter with the assistant warden, he placed the plaintiff in extended lockdown to ensure that he no longer had disciplinary issues. Poret argued that Cannon was not involved in the decision and did not recommend that the plaintiff be placed in administrative segregation.

Richardson argued that he was not involved in the decision to place the plaintiff in administrative segregation and that he simply complied with orders to escort him there. Richardson denied that he refused to permit the plaintiff to declare himself a medical emergency on September 4, 2009.

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods*, 60 F.3d at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of

that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimis acts* that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of

a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*). Adverse acts that cause an inmate only a "few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be *de minimis* acts. *Id.* at 685-86. Filing a disciplinary charge that is dismissed constitutes an adverse act that is "less substantial than the least substantial *de minimis* act identified by the *Morris* court. *Starr v. Dube*, 334 Fed. Appx. 341 (1st Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)(a "single [allegedly unjustified] retaliatory charge that is later dismissed is insufficient to serve as the basis of a § 1983 action").

Taking the plaintiff's version and chronology of events as true for purposes of the motion for summary judgment, plaintiff has alleged sufficient facts to withstand a motion for summary judgment on his retaliation claim. The defendants' version of events obviously is different, but not completely uncontroverted. There are material factual issues in dispute which render summary judgment on the plaintiff's retaliation claim inappropriate.

### F. Conspiracy to Act With Deliberate Indifference to Health

Plaintiff alleged that Asst. Warden Poret conspired with Lt. Savoy and Maj. Richardson to act with deliberate indifference to his health. Specifically, the plaintiff alleged that on February 9, 2009, he was transferred from extended lockdown to Hawk unit. Plaintiff alleged that on March 3, 2009, he was moved to a working cell block and was advised that he would have to perform work in the agricultural fields. Plaintiff alleged that he is a 70 year old who suffers from high blood pressure, diabetes, high triglycerides and

arthritis in both knees.

Plaintiff alleged that six months later, on September 3, 2009, Asst. Warden Poret threatened to have him assigned to work in the agricultural fields. Plaintiff alleged that when he told Asst. Warden Poret that to do so could cause him great bodily harm or death given his medical condition, Asst. Warden Poret responded that "if he died, the suit would end."

Plaintiff further alleged that on September 4, 2009, he was pulled from the line and was told by Maj. Richardson that he would have to work in the agricultural fields. Plaintiff alleged that he declared himself a medical emergency. Plaintiff alleged that Maj. Richardson denied his request to declare himself a medical emergency and then issued the plaintiff a disciplinary report for aggravated work offense.

Plaintiff alleged that on September 10, 2009, he was sent to work in the agricultural fields. Plaintiff alleged that after walking approximately one mile he collapsed, suffering from chest pain, nausea, dizziness and profuse sweating. Plaintiff alleged that he was transported by ambulance to the prison infirmary where he was treated for dehydration, high blood pressure and high blood sugar. Plaintiff alleged that following this incident, Dr. Roundtree issued him a permanent medical duty status of "Regular Duty with Restrictions; Out of Fields and No Sports."

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

The record evidence showed that on July 1, 2009, the plaintiff was issued a medical duty status of regular duty - permanent.[5] This regular duty medical duty status was in effect at the time the plaintiff became ill on September 10, 2009, and there is no evidence that the defendants issued the original duty status or that there were any limitations on that status.[6] The record evidence also showed that the plaintiff was examined by medical personnel immediately after the September 10, 2009, incident, and his medical duty status was modified to regular duty with restrictions prohibiting work in the agricultural fields.[7]

In light of the plaintiff's duty status and his immediate medical attention, there is insufficient evidence that the defendants were deliberately indifferent to the plaintiff's serious medical needs, which is a specific and difficult burden to meet. It does not preclude using the same evidence for another purpose, such as in the retaliation claim. Moreover, to establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act. *Arseneaux v. Roberts*, 726 F.2d 1022 (5th Cir. 1982). The conspiracy allegations made by the plaintiff are conclusory, and more than a blanket accusation is necessary to support a § 1983 claim. *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820 (1984); *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir. 1987); *Arseneaux v.Roberts, supra*.

**G. Respondeat Superior**

Plaintiff named Secretary LeBlanc as a defendant but failed to allege any facts against him which rise to the level of a constitutional violation. In opposition to the

---

[5] Record document number 34, attachment to Second Supplemental and Amending Complaint.

[6] *Id.*

[7] *Id.*

defendants' motion for summary judgment the plaintiff argued that Secretary LeBlanc is responsible for the implementation and poor management of the ARP and the Disciplinary Rules and Procedures for Adult Inmates. Plaintiff argued that several defendants utilized the ARP and prison rule book to maintain punitive measures against an inmate (presumably the plaintiff) for his constitutionally protected conduct in accessing the courts.[8]

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

First, the Administrative Remedy Procedure does not itself establish any federal right. It is a mechanism for resolving disputes at the institutional level. Second, there is no evidence in the record of a constitutionally deficient policy contained in the ARP or the

---

[8] Plaintiff's Memorandum in Opposition to the Defendants' Motion for Summary Judgment, record document number 61, pp. 9-10, ¶ F.

Disciplinary Rules and Procedures for Adult Inmates, both of which were previously approved by this court. *See, Ralph v. Dees*, CA 71-94 (M.D.La.), and *Williams v. Edwards*, CA 71-98 (M.D. La.), *affirmed*, 547 F.2d 1206 (5th Cir. 1977). There is no evidence in the record that the policies contained in the ARP and Disciplinary Rules and Procedures for Adult Inmates in effect at the time of the incident were constitutionally deficient or that Secretary LeBlanc knew or believed that the procedures contained therein would result in a denial of access to the courts. Defendants Le Blanc is entitled to summary judgment as a matter of law.

### H. Supplemental Jurisdiction

Plaintiff sought to invoke the supplemental jurisdiction of this court. District courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had original jurisdiction; or for other compelling reasons. 28 U.S.C. § 1367.

### **RECOMMENDATION**

It is the recommendation of the magistrate judge that the defendants' motion for summary judgment be granted in part, dismissing the plaintiff's claims against Secretary James LeBlanc and the claims that Asst. Warden Troy Poret threatened him on September 3, 2009 and brushed against him and threatened him on September 21, 2009, and in all other respects the defendants' motion for summary judgment be denied. It is further recommended that the court decline to exercise supplemental jurisdiction and this matter

be referred back for further proceedings on the plaintiff's retaliation claim.

Signed in Baton Rouge, Louisiana, on September 7, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**